## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CORDELL SANDERS, # R41346, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-1577-RJD |
| vs. | ) | |
| | ) | |
| JADA HUTCHINGS, JONAVAN | ) | |
| BRIDWELL, ROBERT E. REID, | ) | |
| DARREL MELLENDORF, and AARON | ) | |
| MUSGRAVE. | ) | |
| | | |
| Defendants. | | |

## ORDER

**DALY, Magistrate Judge:**

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC") at Menard Correctional Center, filed this matter pro se pursuant to 42 U.S.C. §1983.   He alleges that on July 25, 2023, he was in the infirmary at Lawrence Correctional Center ("Lawrence") suffering from a mental health crisis.   Doc. 1, p. 3.   He asked Defendants Hutchings, Bridwell, and Reid to call a mental health crisis worker to help him, but they refused.   *Id*.   To calm himself, Plaintiff placed a bed sheet over his cell door window.   *Id*.   Defendants, Reid, Mellendorf, and Musgraves then entered Plaintiff's cell with force and used mace upon him.   *Id*.   Following the Court's threshold review conducted pursuant to 28 U.S.C. 1915A, Plaintiff's case proceeded on the following claims:

> Count 1:    Eighth Amendment deliberate indifference claim against Hutchings, Bridwell, and Reid for refusing to contact mental health staff in response to Plaintiff's mental health crisis.

> Count 2:    Eighth Amendment excessive force claim against Defendants Reid, Mellendorf, and Musgraves for their use of excessive force during Plaintiff's mental health crisis.

Doc. 9, p. 5.   The parties conducted discovery and this matter now comes before the Court on

Page 1 of 8

Plaintiff's Motion for Summary Judgment; Defendants did not file a Response.   Defendants also filed a Motion for Summary Judgment (Doc. 76) to which Plaintiff responded (Doc. 80).

**Plaintiff's Deposition Testimony**

Prior to the events at issue in this case, Plaintiff had requested at least one crisis intervention while in the IDOC.   Doc. 76-2, p. 28.   The following procedure is "usually how" a crisis intervention is handled "in every prison [Plaintiff's] been to."   *Id*., p. 29.   When the inmate requests a crisis intervention, a guard immediately puts the inmate in handcuffs "behind [his] back to prevent [him] from harming [himself] or harming anybody else."   *Id*.   The prison guard then removes the inmate from his cell and puts him in a holding area away from other inmates.   *Id*.   A correctional officer calls "the crisis people" so that the inmate can be evaluated for homicidal or suicidal thoughts.   *Id*.

Plaintiff suffered a fractured wrist in 2022 and resided in the infirmary at Lawrence in 2023 so that he could wear a bone growth stimulator machine to heal the wrist.   *Id*., pp. 25-27.   On July 25, 2023, he was residing in a cell in the infirmary and had one roommate.   He requested a crisis intervention on that date because "the infirmary is extremely isolating and I was feeling depressed and just hopeless and I needed to speak to somebody about that."   *Id*., pp. 29-30. Plaintiff requested the crisis intervention from Defendant Jada Hutchings by knocking on the window.   *Id*., p. 30.   He told her that he needed a crisis team because he was depressed and "just needed to really talk to somebody."   *Id*., p. 31.   Defendant Hutchings "didn't say anything and she just walked away" and made a phone call.   *Id*., p. 37.

Plaintiff told Defendant Bridwell "through the side of the door" that he needed a crisis team and in response, Defendant Bridwell "shook his head no."   *Id*.   Defendant Reid then approached Plaintiff's door, and Plaintiff told him that "I needed a crisis intervention and that I felt depressed and hopeless."   *Id*., p. 31.   Plaintiff believes that Defendant Reid "didn't do anything" and "didn't contact anybody" because "nobody ever showed up. Usually during a crisis it's considered serious

and the mental health people, they appear [] instantly." *Id.* Also, Plaintiff "was never placed in handcuffs or removed from th[e] situation." *Id.*, p. 32.

Plaintiff placed a bed sheet over his door and "sat on the stool in my cell" and tried performing calming and breathing exercises that "mental health people…instructed me to do...years ago." Plaintiff does not know if anyone asked him to take the bed sheet down because it was difficult to hear through his door. *Id.*, p. 34. He pulled his bed to the door to barricade himself in the room. *Id.*, p. 39.

At some point, a group of officers appeared outside of Plaintiff's cell and he could hear their "loud" radios. *Id.*, p. 40. When asked if they said anything to him, Plaintiff testified that "[i]t's possible that they did. I couldn't hear them." *Id.*, p. 41. At least eight officers entered his cell. *Id.*, p. 48. Plaintiff recognized Defendants Reid, Mellendorf, Musgraves, and Bridwell. *Id.*, p. 42. Plaintiff had a pillow in his hands and nothing else. *Id.*, p. 48. Defendant Reid "had on a white shirt" and Plaintiff recognized his face." *Id.* When asked how he recognized Defendant Mellendorf, Plaintiff responded "his face. I know him. I've seen him before." Plaintiff does not remember whether Mellendorf was wearing a helmet and/or shield, but if Defendant "did have a helmet on [Plaintiff] could see his face through the clear glass" of the shield. *Id.*, p. 43. Plaintiff described Defendant Musgraves as five feet, seven inches tall and weighing approximately 180 pounds. *Id.* Defendant Musgraves has dark hair and Plaintiff does not "think he had a helmet on or anything…I knew his face." *Id.*

Defendant Reid immediately "grabbed a hold" of Plaintiff and forced him violently to the ground." *Id.*, p. 44. Defendant Reid then punched Plaintiff in the head and eye and stuck his fingers in Plaintiff's left eye and "held them there." *Id.*, pp. 44-45. Defendant Musgrave sprayed mace on Plaintiff's body and face and punched Plaintiff in the head. *Id.*, p. 45. While Defendant Reid's fingers were in Plaintiff's eye, Defendant Musgraves held the mace can close to Plaintiff's eye and said he was going to destroy Plaintiff's eyeball. *Id.*, p. 46. Defendant Mellendorf stood

on Plaintiff's upper back which caused the "air to leave [Plaintiff's] lungs."  *Id*., p. 46.   Plaintiff knew that it was Defendant Mellendorf whose foot was on his back because Plaintiff saw Defendant Mellendorf enter the room behind Reid and Musgraves and then walk behind Plaintiff. *Id*., p. 42.   Defendant Mellendorf "was the only one back there…so it couldn't have been [anyone] else [who] put their foot" on Plaintiff's back.    *Id*., p. 47-48.   Either Defendant Reid or Defendant Mellendorf handcuffed Plaintiff and as they exited the infirmary, Defendant Mellendorf made "crazy" statements, that he [Defendant Mellendorf] likes mace and does not "care about the mace burning."  *Id*., p. 47.   The officers put him in a shower in the restrictive housing building and left. *Id*., p. 48.

<u>**Defendants' Verified Interrogatory Answers**</u>

Defendant Jada Hutchings states that on July 25, 2025, she contacted Defendant Bridwell (instead of a crisis counselor, as requested by Plaintiff) because Defendant Bridwell was her "superior on the chain of command" and she heard Plaintiff threaten to stab his cellmate.   Doc. 76-3, p. 3; Doc. 76-4, p. 3.   However, the Incident Report prepared by Defendant Hutchings states that Plaintiff threatened to stab his cellmate after she asked "Sergeant Bridwell to come back and talk to [Plaintiff]."   Doc. 73, p. 17-21.

Defendant Bridwell heard Plaintiff "threaten[] to harm his cellmate and staff" and say that he "would make it difficult for officers to enter his cell."   Defendant Bridwell then called Defendant Reid (the "Zone Lieutenant") and "notified [him] of [the] situation."   Doc. 76-5, pp. 2, 16.

Defendant Reid states that he requested an emergency response team to come to the infirmary because he "observed pink soap coming from underneath Plaintiff's door" and Plaintiff "refused direct orders to take a bed sheet down from the door window."   Doc. 76-6, p. 2.   Plaintiff also "yelled that he had taken his cellmate hostage and threatened to stab him."   *Id*.   When Defendant Reid entered the cell, Plaintiff was "wielding a stool above his head and looked like he

was going to throw the stool." *Id*., p. 3.   Defendant Reid denies throwing Plaintiff to the ground, punching Plaintiff, and sticking his fingers in Plaintiff's eyes.  *Id*., pp. 4-5.   Defendant Reid "called for a mental health counselor."  *Id*., p. 1.

Defendant Musgraves "denies participating in a cell extraction involving Plaintiff on July, 25, 2023."   Doc. 76-11, p. 2.   Defendant Mellendorf "states that he was not a part of the [emergency response team] that entered Plaintiff's cell on July 25, 2023."   Doc. 76-10, p. 1.

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### Discussion

As a preliminary matter, the Court notes that Defendants never filed a Response to Plaintiff's Motion for Summary Judgment.   While Plaintiff filed a Response to Defendants' Motion for Summary Judgment, he did not properly respond to Defendants' Statement of Material Facts as required by Local Rule 56.1(b).   Instead of citing to the record to support his denial of

certain material facts listed in Defendants' Motion, Plaintiff simply denies them.   In any event, the record before the Court reflects genuine issues of material fact and therefore summary judgment is neither warranted for Plaintiff nor Defendants.   Plaintiff's deposition testimony describes very different events than what is contained in Defendants' Interrogatory answers and incident reports.   To find in favor of either Plaintiff or Defendants would necessarily mean weighing the evidence and making credibility determinations, which the undersigned will not do.

Regarding Count I, Plaintiff must "provide evidence, either direct or circumstantial" that shows (1) "he had an objectively serious medical need" (2) "which [the defendant] "[knew] of and disregard[ded] a substantial risk of harm."   *Brown v. Osmundson*, 38 F. 4th 545, 559-60 (7th Cir. 2022) (internal citations omitted).   Defendants do not contest that Plaintiff's depression was a serious medical need, but they argue that they reasonably called for help via the emergency response team instead of a crisis counselor.   However, the record reflects a genuine issue of material fact regarding why Defendants put the emergency response team into motion. Defendants claim that Plaintiff was threatening his roommate, but the incident report completed by Defendant Hutchings indicates that she decided to call the emergency response team (instead of a crisis counselor) before Plaintiff made those threats.   Drawing all reasonable inferences in favor of Plaintiff, the jury could find that Defendants Hutchings, Bridwell, and Reid were deliberately indifferent to Plaintiff's depression because they arranged for a violent raid of his cell instead of providing him with a crisis counselor.   Drawing all reasonable inferences in favor of Defendants and assuming that Plaintiff presented a threat to his roommate and/or staff, the jury could likewise find that Defendants Hutchings, Bridwell, and Reid reasonably called for other correctional officers to help them restrain Plaintiff.

As for Count II, Plaintiff's deposition testimony describes very different events than what is contained in Defendants' Interrogatory answers and incident reports.   The jury must resolve whether Plaintiff wielded a stool at the officers when they entered his room, and whether he was

thrown to the ground and punched and had Reid's fingers stuck in his eyes.

Defendants Musgraves and Mellendorf stated in their Interrogatory answers that they were not involved in the alleged events.   Defendants produced records from Lawrence on July 25, 2023 that reflect Defendant Musgraves was not scheduled to work that day and Defendant Mellendorf took a sick/personal day.   Doc. 76-12.   Defendants also produced a declaration by a shift supervisor, interpreting those records.   Doc. 76-13.   The Court acknowledges that a claim supported solely by testimony that is "irrefutably contradicted by documentary evidence" may not necessarily survive summary judgment.   *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986). Here, the shift records produced by Defendants are not irrefutable.   Plaintiff described Defendants' appearances and provided specific details regarding their involvement in the events on July 25, 2023.   Consequently, whether Defendants Mellendorf and Musgraves entered Plaintiff's cell on July 25, 2023 and exerted excessive force upon Plaintiff is a question for the jury.

### Conclusion

Plaintiff's Motion for Summary Judgment (Doc. 73) is DENIED.   Defendants' Motion for Summary Judgment (Doc. 76) is DENIED.

Also pending are two motions filed by Plaintiff regarding Defendant Hutchings' failure to respond to a second set of Interrogatories and Plaintiff's request that defense counsel make his deposition transcript available to him.   Docs. 65 and 66.   Defendants responded, noting that four days before Plaintiff filed those motions, counsel had sent Defendant Hutchings' answers to the second set of Interrogatories to Plaintiff.   Docs. 67.   Defense counsel also informed the Court that Plaintiff's deposition transcript and errata sheet were at Menard and Plaintiff just needed to schedule a time to review the transcript.   *Id*.   Plaintiff's deposition transcript and Defendant Hutchings' Interrogatory answers were attached to Defendants' Motion for Summary Judgment. Docs. 76-2, 76-4.   Plaintiff's Motions regarding the interrogatory answers and his deposition

transcript are therefore DENIED AS MOOT.

**IT IS SO ORDERED.**

**DATED: July 17, 2026**

                                                      _____

                                                      **Hon. Reona J. Daly**
                                                      **United States Magistrate Judge**